CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED

09/05/2025

LAURA A. AUSTIN, CLERK
BY: _/s/ Amy Fansler_
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

JOI L. SMITH,                          )
                                       )
                Plaintiff,             )
                                       )
v.                                     ) Civil Action No. 5:25-CV-_00090_____
                                       )
DYNAMIC AVIATION GROUP, INC.,          )
a Virginia corporation,                )
                                       )
                Defendant.             )

_____

## COMPLAINT
(Jury Trial Demanded)

The Plaintiff, Joi L. Smith ("Smith" or "Plaintiff"), by counsel, complaining of Defendant,

Dynamic Aviation Group, Inc. ("Dynamic") alleges and says:

### NATURE OF THE ACTION

1.     Plaintiff brings this action for legal and equitable relief to correct and remedy her

employers' unlawful, discriminatory, and retaliatory employment practices during the course of

and in the termination of her employment and thereafter.  Plaintiff brings this action to make her

whole and compensate her for Defendant's violations of the Family and Medical Leave Act of

1993, 29 U.S.C. § 2601, *et seq*. (the "FMLA") and the Americans with Disabilities Act of 1990,

as amended, 42 U.S.C. § 12101, *et seq*. (the "ADA") as well as for combination or intersectional

discrimination.

2.     This action also states claims against the Defendant for violations of the Virginia

Human Rights Act, as amended in July 2020 by the Virginia Values Act (Senate Bill 868), codified

at Va. Code Ann. § 2.2-3900, *et seq*.

<u>JURISDICTION AND VENUE</u>

3.      Jurisdiction is founded in this case upon 28 U.S.C. §§ 1331, 1343, 29 U.S.C. § 2617 and 42 U.S.C. § 12117.  The demand for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

4.      Supplemental jurisdiction over the Virginia state law claims is founded upon 28 U.S.C. § 1367.

5.      Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(2) because the events giving rise to this action occurred, and Plaintiff's personnel records are maintained by Defendant, in this District and Division.

<u>ADMINISTRATIVE PROCEEDINGS</u>

6.      Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") including the disability discrimination and retaliation complained of herein on December 14, 2023.  A true copy of the Charge is attached hereto marked Exhibit 1 and is incorporated herein by reference. The Charge was dual filed with the Virginia Attorney General's Office in the Office of Civil Rights with respect to the Plaintiff's claims under the Virginia Human Rights Act.  The EEOC issued a Notice of Right to Sue on Plaintiff's request on September 4, 2025 which constitutes the right to sue for the Virginia state law claims as well.

7.      All administrative conditions precedent to the filing of this lawsuit have been performed or have occurred.

<u>PARTIES</u>

8.      Plaintiff is a 61-year-old female.  She is a citizen of the United States and a resident of Staunton, Augusta County, Virginia.

9.     At times relevant to the claims herein, Plaintiff had been employed by Defendant for more than 12 months, working in excess of 1250 hours with Defendant during the previous 12-month period.  Plaintiff was an "eligible" employee within the meaning of the FMLA pursuant to 29 U.S.C. § 2611(a).  Additionally, at all relevant times, Plaintiff was a "qualified individual" within the meaning of the ADA pursuant to 42 U.S.C. § 12111(8).

10.     Defendant Dynamic Aviation Group, Inc., does business as Dynamic Aviation. Defendant is and was at all times relevant to the matters alleged herein a corporation organized and existing under the laws of the Commonwealth of Virginia with its principal office located in Bridgewater, Rockingham County, Virginia.  Defendant Dynamic Aviation's registered agent is located in Harrisonburg, Virginia.

11.      At all times relevant to the matters alleged herein, Defendant operated a business engaged in providing aviation and aerospace services to commercial customers and governments around the world.  At all relevant times, Defendant operated out of offices located at the Bridgewater Air Park in Bridgewater, Rockingham County, Virginia.

12.     At all times relevant to the matters alleged herein, Defendant was an employer engaged in an industry affecting commerce, and had more than 500 employees for each working day in each of twenty or more calendar weeks in each relevant calendar year.  Further, Defendant employed more than 50 employees at the worksite in Bridgewater, Virginia, where Plaintiff worked.  Defendant was and is an "employer" within the meaning and subject to the provisions of the FMLA pursuant to 29 U.S.C. § 2611(4)(A).

13.     At all times relevant to the matters alleged herein, Defendant was and is an "employer" within the meaning and subject to the provisions of the ADA pursuant to 42 U.S.C. § 12111(5)(A).

14.     At all times relevant to the matters alleged herein, Defendant's agents and employees were acting during the course and within the scope of their employment or agency and with the knowledge and consent of Defendant.

## FACTS

15.     Plaintiff has earned an Associate Degree in Business Administration, in Business Management, and in Accounting. She also holds a number of certificates related to office professionals, including a certificate in HR Management. She began working for Defendant at the Bridgewater Air Park on December 27, 2016 as a human resources assistant/receptionist. She later was promoted into a corporate receptionist position. She was again promoted in September 2020 when she assumed the position of Front Office Coordinator and held that role until she was illegally fired on September 14, 2023.

16.     Plaintiff enjoyed her work, performed her job well, and met or exceeded Defendant's legitimate expectations of her during her employment and through the time her employment was illegally terminated on September 14, 2023.  Throughout her more than six and one-half years of employment with Defendant, Defendant gave Plaintiff only good performance reviews.

17.     Plaintiff's work in the front office included answering phones, greeting and providing badges for admission to the premises to visitors, receptionist duties typical to a corporate office setting, and some human resources tasks. Plaintiff further acted as the executive assistant for Karl Stoltzfus, Defendant's founder, until his death in late 2020. Prior to the COVID-19 pandemic, another employee had assisted Plaintiff with the front office duties due to the volume of work. During the pandemic, though, Defendant terminated Plaintiff's assistant, leaving Plaintiff as the sole employee in the front office.

18.    On October 6, 2021, Plaintiff suffered non-work physical injuries when she was struck by pickup truck while crossing a pedestrian crosswalk in a parking lot. She was violently knocked off her feet to the ground, where she fell on her left side, striking her head, hip, and shoulder on the pavement.

19.    Plaintiff's injuries were serious. Plaintiff has been diagnosed with postconcussive syndrome, a traumatic brain injury, and has suffered joint and other health issues as well.

20.    Among her neurological symptoms, Plaintiff suffered cognitive dysfunction, short term memory loss, confusion, balance issues, headaches, and joint pain in her hip and shoulder where she fell on the pavement. She also experienced issues with multi-tasking and processing information quickly.

21.    Despite her injuries, Plaintiff only missed a few days of work and worked a reduced schedule for a couple of weeks upon her return to Dynamic Aviation, even though she continued to receive treatment for her injuries. All of Plaintiff's time off was covered by her available leave, the FMLA and/or the ADA.

22.    Plaintiff applied for intermittent FMLA leave related to her conditions, including post-concussive syndrome and headaches, in or around June 2022.

23.    Plaintiff's neurologist recommended that she take one day off from work per week at her discretion, and that she be provided breaks at work and assistance with multi-tasking. He gave a doctor's note to this effect, which Plaintiff provided to her supervisor, Joel Shank ("Mr. Shank"), a white male in his mid to late 30's and the Vice President of Human Resources.

24.    Mr. Shank minimized Plaintiff's complaints necessitating accommodations, advising Plaintiff that she was just being interrupted, not actually having difficulty multi-tasking,

and that her job did not require multi-tasking. He gave her no assistance, and rejected her request for the accommodations recommended by Plaintiff's doctor.

25.     Plaintiff continued facing difficulties and symptoms related to her post-concussive syndrome and TBI. On July 10, 2023, Plaintiff's neurologist advised Plaintiff that she required accommodations at work in order for her brain to heal more fully.

26.     Initially, Plaintiff's neurologist recommended that she be limited to 40-hour workweeks, to be spread across four (4), 10 hour days, so as to allow an additional day per week for her brain to rest. Plaintiff informed Defendant of this restriction by approaching Mr. Shank with the request to work a four-day workweek, at 10 hours per day.

27.     Mr. Shank questioned Plaintiff about how long she would need the four-day work week accommodation. He allowed Plaintiff to complete her work in this way for a few weeks. Mr. Shank then changed Plaintiff's schedule back to five days per week. Plaintiff still was not allowed a lunch break despite her requests for accommodation to give her a break during the day. Plaintiff was continuing to receive overtime in this period due to the de facto requirement that she work through her lunches.

28.     At or around the end of August or beginning of September of 2023, Plaintiff received an email from a young woman (in her mid to late 30's) in the Human Resources ("HR") department of Defendant informing Plaintiff that she needed to recertify her intermittent FMLA leave. Until that point, Plaintiff had not used any of her FMLA leave entitlement for 2023.

29.     Plaintiff was not told that she was required to work in excess of 40 hours per week or that she needed to cover time in excess of 40 hours per week with FMLA leave.

30.     At or around the time when she received the email from the young HR representative, at the end of August or early September of 2023, Plaintiff requested an

accommodation that she be allowed to take a half-day off per week, and that she not be required to work through lunches without a break. Plaintiff made this request to Mr. Shank via email, copying Eric Terry ("Mr. Terry"), the Senior Vice President of Human Resources. Plaintiff also requested that her front office position be restructured to allow her to perform her administrative duties under the HR department so as to minimize multi-tasking, which she was still struggling with as a neurological symptom of her conditions.

31.    Mr. Shank denied Plaintiff's requests for accommodations allowing her to take a half-day off per week, that she not be required to work through lunches without a break, and that her front office position be restructured under the HR department.

32.    Shortly thereafter, in early September, Plaintiff met with Mr. Terry to discuss her health conditions and challenges she was having at work. He promised to follow up with her with suggestions on how her requests could be accommodated. Mr. Terry, however, failed to follow up with her to engage in good faith in the interactive process under the ADA.

33.    During this time, Plaintiff continued to work five days per week and without a break for lunch, counter to her neurologist's recommendations. She continued to perform her work well, but her job became increasingly stressful as a result of the denial of her requested accommodations.

34.    Mr. Shank eventually responded to Plaintiff informing her that Dynamic Aviation would provide her the accommodation of limiting her workweek to 40 hours, and allowing her to have a break for lunches, beginning the day after which he had promised her this. However, Mr. Shank did not arrange for Plaintiff's shift to have coverage at lunch, resulting in her having to continue as she had—working through lunch without a break.

35.    On September 14, 2023, Mr. Shank and an HR representative informed Plaintiff that Dynamic Aviation was restructuring, that her job was being eliminated and she was therefore

terminated. Mr. Shank presented Plaintiff with a severance agreement and a letter of recommendation. The letter of recommendation stated in part that "Joi remains in good standing with Dynamic Aviation and we highly recommend Joi Smith for any employment position for which she may be seeking." Plaintiff did not accept the severance proposal.

36.     Plaintiff's job was the only job affected by the purported "restructuring," and Mr. Shank acknowledged that many of Plaintiff's job duties would remain as duties needing to be performed, such as the receptionist duties.

37.     Defendant did not offer Plaintiff to remain to perform in the receptionist position Mr. Shank acknowledged would remain. Indeed, Defendant immediately placed a younger woman in her 20's in this position to perform the job.

38.     Defendant also falsely stated that Plaintiff had not "applied" to stay in her position to perform the tasks that remained after the Defendant "restructured" Plaintiff's position.

39.     On the same day Plaintiff was fired, she immediately applied for a housekeeping position that was open with Defendant. She was qualified for this position. In fact, she was encouraged to apply for the position by the housekeeping manager.

40.     Plaintiff learned on October 19, 2023 that Defendant hired someone else for the housekeeping position, without granting her an interview.

41.     Shortly thereafter, Defendant posted an opening for the receptionist position Defendant had not offered Plaintiff. The job duties listed had all been part of Plaintiff's duties. Plaintiff applied for the position on October 21, 2023. Defendant did not even grant Plaintiff an interview for that position. Rather, Defendant hired someone else decades younger than Plaintiff despite Plaintiff's superior qualifications.

42.     Plaintiff's health conditions were serious physical or mental impairments resulting from the accident on October 6, 2021. These serious health conditions substantially limited major life activities, including brain and executive functioning.   Plaintiff has a record of such impairments and/or Defendant perceived her as being so impaired.

43.     Despite her health conditions arising from her injuries, Plaintiff continued to perform her job well with or without reasonable accommodation, and though she did not use FMLA leave because of other available leave, she was eligible and had been approved to use available leave for days she was required to be off work due to her health conditions. Plaintiff could have taken FMLA leave for the reduced hours that she had requested, but Defendant did not provide that option to her.

44.     Instead of Defendant engaging in the interactive process required by the ADA, or informing her of her rights to use FMLA leave for the requested break periods recommended by her medical providers, Plaintiff was forced to work a schedule that contradicted her providers' recommendations and unnecessarily extended her recovery time from her conditions.

45.     As a result of Defendant's actions, Plaintiff has suffered loss of and been denied her job, income, and benefits and has suffered emotional distress, humiliation, embarrassment, injury to her reputation, anxiety, and depression.

<u>COUNT I-Violations of the FMLA</u>

46.     Plaintiff incorporates by reference and realleges the foregoing paragraphs as if fully set forth here.

47.      Plaintiff's health conditions, including her post-concussive syndrome and TBI, as well as her joint injuries, constituted serious health conditions within the meaning of the FMLA and/or its implementing regulations, of which Defendant was well aware.

48.    At all relevant times, Plaintiff suffered from chronic conditions that were treated with medications and physical therapy and other treatment, and required more than two visits per year to see a healthcare provider to treat the conditions.  Plaintiff's chronic serious health conditions and her related need for absences or periods of absence were protected under the FMLA.

49.    Plaintiff had not exhausted her FMLA leave entitlement with respect to the matters complained of herein through the date of her unlawful termination on September 14, 2023.

50.    Plaintiff was entitled to take leave under the FMLA as a result of her serious health conditions.

51.    Defendant was aware that Plaintiff's condition was protected by the FMLA and that leave associated was covered under the FMLA.  Defendant interfered with Plaintiff's rights under the FMLA by failing to grant her leave for Plaintiff's requested reduced workweek hours and breaks over lunch.

52.    Defendant used Plaintiff's approved FMLA leave, or leave which was FMLA qualifying, and Plaintiff's possible future need for leave in relation to her serious health conditions as negative factors in employment decisions relating to her, including in ousting Plaintiff from her position under the guise of a sham "restructuring," despite many duties that Plaintiff was performing remaining, and without offering her the receptionist position either before her termination or in October 2023.

53.    Defendants interfered with Plaintiff's rights under the FMLA, retaliated, and discriminated against Plaintiff for having approved FMLA leave or needing to use qualifying FMLA leave, terminated Plaintiff from her employment, and refused to rehire into the two positions she sought after her termination, all in violation of 29 U.S.C. § 2615(a)(1) and (a)(2).

54.    Defendant's conduct complained of herein was willful and without legal justification.  Defendant's conduct interfered with, restrained, and/or denied the exercise of or attempt to exercise Plaintiff's rights under the FMLA.

55.    As a direct and proximate result of the acts and practices of Defendant, its agents, and employees set forth herein, Plaintiff has suffered and continues to suffer injury and damage, including loss of employment, and past and future loss and denial of income, including wages, healthcare benefits, and other employment benefits, together with costs and expenses of litigation, including attorney's fees.

## COUNT II-Violations of the ADA

56.    Plaintiff incorporates by reference and realleges the foregoing paragraphs as if fully set forth here.

57.    The ADA Amendment Act of 2008 (ADAAA) applies to Plaintiff's ADA claims of failure to accommodate and wrongful termination because Defendant's actions took place after the effective date of the ADAAA.  Pub. L. 110-325, § 8, 122 Stat. 3553 (Sept. 25, 2008), codified at 42 U.S.C. § 12101 (Note).  Under the ADAAA, Plaintiff's disability must be assessed without regard to the ameliorative effects of mitigating measures like medical treatments, therapy and medication.

58.    At all relevant times, Plaintiff was able to perform the essential functions of her job with or without reasonable accommodation, including when she sought to reduce her hours to a 40 hour workweek in July of 2023.

59.    Plaintiff requested reasonable accommodation for her disabilities and provided Defendant with her doctor's notes requiring appropriate and reasonable accommodation of reduced

hours, breaks over lunch, and less multi-tasking before she was terminated from her employment. All of Plaintiff's requests for accommodation of her health conditions were reasonable.

60.    Defendant was aware of Plaintiff's disabilities and need for short periods of leave or shift modification and for reasonable accommodations in relation to her disabilities.

61.    Plaintiff's requests could have been accommodated without undue hardship to Defendant.

62.    Among other things, Defendant:

a.    terminated Plaintiff's employment based upon Plaintiff's disabilities, whether actual, through the record of Plaintiff's substantially limiting impairments, or Defendant having regarded Plaintiff as being so impaired;

b.    failed to engage and/or continue to engage in a good faith interactive process with Plaintiff and her healthcare providers to determine the extent and nature of the necessary reasonable accommodations for Plaintiff's disability;

c.    failed and/or refused to engage in the interactive process and make and implement reasonable accommodations with respect to Plaintiff's disability or disabilities, including allowing Plaintiff to work reduced hours and have a break over lunch that allowed her to continue performing the essential functions of her position, and/or providing a short period and/or short periods of medical leave (to which Plaintiff was entitled under the FMLA, the ADA, and Defendants' own leave policies), and these failures and refusals were not in good faith;

d.    terminated Plaintiff's employment based on the need or perceived need to make reasonable accommodations in the future for Plaintiff's disability;

   e. ousted Plaintiff from performing job duties that she had been performing for over six years, and for which it posted a job opening into which it hired another individual without even interviewing Plaintiff to fill the role, due to her disability;

   f. used Plaintiff's disability, whether actual or through a perception of disability and/or her record of having a substantial impairment of major life activities, as negative factors in consideration of her job performance and anticipated future performance;

   g. otherwise discriminated against Plaintiff based upon disability under the ADA.

63. Defendants' adverse actions taken in connection with Plaintiff's employment were discriminatory and based on Plaintiff's disability.

64. Plaintiff was and is qualified for the job she was performing as the Front Office Coordinator because she satisfies the skill, experience and other job-related requirements for the position as well as other positions at Defendant.

65. At all relevant times, Plaintiff was able to perform the essential functions of the position she was occupying as the Front Office Coordinator with or without reasonable accommodation.

66. Plaintiff was and is qualified for the position that remained upon her termination, including the receptionist position Defendant contended was available and for which it later advertised in October 2023 but for which it denied Plaintiff an interview despite the fact that the she satisfied the skill, experience and other job-related requirements for the position.

67. Defendant further denied Plaintiff the housekeeping position for which she was qualified without even granting her an interview.

68.     Defendant's failure to hire Plaintiff into the two positions for which she applied after being fired was because of Plaintiff's disability.

69.     Any reasons given by Defendant for its treatment of Plaintiff were pretextual.

70.     Defendant never offered Plaintiff the receptionist position and Plaintiff never said she would not assume that position.

71.     Defendant's intentional discrimination was with respect to terms, conditions, and privileges of Plaintiff's employment, caused Plaintiff damage during her employment, and resulted in the termination of her employment with Defendant because of disability.

72.     As a consequence of Defendant's intentional discrimination based on disability, Plaintiff has suffered, continues to suffer, and will in the future suffer great emotional distress, anxiety, stress, embarrassment, humiliation, pain, suffering, damage to reputation, and loss of enjoyment of life.

73.     As a consequence of Defendant's actions, Plaintiff has her job, has lost wages and other financial incidents and benefits of employment, and Plaintiff will continue to suffer such losses.

74.     As a consequence of the acts and omissions of Defendant, Plaintiff has incurred and will continue to incur attorneys' fees, costs, and other litigation expenses.

75.     Defendant engaged in the practices complained of with malice or with reckless indifference to Plaintiff's federally protected rights under the ADA entitling her to the recovery of punitive damages.

<u>COUNT III-Violations of the ADA-Retaliation</u>

76.     Plaintiff incorporates by reference and realleges the foregoing paragraphs as if fully set forth here.

77.     Plaintiff made multiple requests for reasonable accommodations to Defendant, due to her disability and/or disabilities.

78.     In violation of 42 U.S.C. § 12203(a), Defendant discriminated and retaliated against Plaintiff through its failure to engage in the interactive process to determine whether reasonable accommodations could be provided to Plaintiff and its subsequent, targeted, termination of Plaintiff despite Defendant's remaining need for Plaintiff's job duties to be performed. Defendant represented to Plaintiff that her position had been "restructured," when it was indeed engineering the workplace to oust Plaintiff from her position so it would not have to worry about how to work with her to accommodate her disabilities.

79.     As a consequence of Defendant's violations of the ADA, including its discriminatory and retaliatory conduct, Plaintiff has suffered great emotional distress, anxiety, stress, embarrassment, humiliation, pain, suffering, and loss of enjoyment of life.

80.     As a consequence of Defendant's actions, Plaintiff has lost employment, wages and other financial incidents and benefits of employment.

81.     As a consequence of the acts and omissions of Defendant, Plaintiff has incurred and will continue to incur attorneys' fees, costs, and expenses.

82.     Defendant engaged in the practices complained of with malice or with reckless indifference to Plaintiff's federally protected rights under the ADA entitling her to the recovery of punitive damages.

COUNT IV- Age Discrimination in violation of the ADEA, 29 U.S.C. § 621, *et seq.*

83.     Plaintiff incorporates by reference and realleges the foregoing paragraphs as if fully set forth here.

84.    Plaintiff was 59 years old when Defendant terminated her from her position, and then denied her for the open position it posted for a substantially similar position shortly thereafter. The person Defendant hired into that position was in her 20's. That young woman did not have the qualifications Plaintiff possessed for the position.

85.    Defendant failed to select Plaintiff for the open receptionist position not only because of her disabilities, but also because of her age and despite her greater knowledge, experience, skill, seniority, and satisfactory performance in the same position.

86.    Plaintiff was subjected to adverse employment action by Defendant because of her age.

87.    Defendant's excuse that Plaintiff had not applied for the remainder of the position after its "restructuring" of her position is pretext for why the Defendant selected a younger woman in her 20's to perform the remaining tasks of Plaintiff's position.

88.    The real reason Defendant did not ever ask Plaintiff to perform the remaining tasks of her position after it "restructured" her position was because it preferred a younger employee to perform Plaintiff's duties.

89.    Defendant intentionally and willfully discriminated against Plaintiff because of her age.

90.    As a consequence of Defendant's intentional discrimination, Plaintiff has lost wages and other financial incidents and benefits of employment as well as economic opportunities, and Plaintiff will continue to suffer such losses into the future.

91.    As a consequence of Defendant's intentional age discrimination, Plaintiff has incurred and will continue to incur attorneys' fees, costs, and expenses of litigation.

COUNT V: Intersectional Discrimination; Age, Disability

92.     Plaintiff incorporates by reference and realleges the foregoing paragraphs as if fully set forth here.

93.     The actions of Defendant as described herein constitute combination or intersectional discrimination based upon age in violation of the ADEA and based upon disability in violation of the ADA.

94.     As a direct result of the combination of Plaintiff's age and disability, Plaintiff was terminated from her job and not provided two other jobs after the illegal firing. Plaintiff has suffered and will continue to suffer great emotional distress, anxiety, stress, embarrassment, humiliation, pain, suffering, damage to reputation, and loss of enjoyment of life in addition to lost wages and other financial incidents and benefits of employment.

95.     Defendant acted willfully and with actual malice or with reckless disregard of the law in depriving Plaintiff of income because of the intersection of her disabilities and age, so as to support an award of liquidated and/or punitive damages.

### COUNT VI-Violation of the Virginia Human Rights Act - Disability

96.     Plaintiff incorporates and relies upon the averments stated in the foregoing paragraphs of the Complaint as if the same were fully restated here.

97.     Defendant discriminated against Plaintiff and treated Plaintiff in a disparate manner because of disability in violation of the Virginia Human Rights Act, as amended, codified at Virginia Code Ann. § 2.2-3900, *et seq.*

98.     Defendant terminated Plaintiff with no prior warning, no notice, and with Plaintiff never having had any performance issues. To the contrary, Plaintiff devoted herself to her job, with positive and proven results.

99.    Defendant terminated Plaintiff from her employment because of her disability and Defendant's desire not to accommodate Plaintiff.

100.    Defendant engaged in a sham "restructuring" in order to terminate Plaintiff's employment because of her disability and need for a reasonable accommodation or Defendant's perception of Plaintiff's need for a reasonable accommodation.

101.    Defendant failed to engage in the interactive process with Plaintiff, and instead terminated her employment without offering her to move to a receptionist job.

102.    Defendant falsely claimed that Plaintiff had rejected performing the receptionist job, but no job was ever offered to Plaintiff or discussed with Plaintiff.

103.    After Plaintiff was unlawfully terminated because of her disability, she applied for two positions for which she was well qualified. Both positions would have allowed Plaintiff to retain her health coverage through Defendant.  Defendant did not even give her an interview.

104.     Defendant treated Plaintiff differently because of her disability.

105.    Plaintiff was discriminated against because of her disability.

106.    Defendant's discriminatory treatment of Plaintiff was in violation of the Virginia Human Rights Act, as amended.

107.    In discriminating against Plaintiff in violation of the law, Defendant evinced malice, spite, and ill will; its actions were willful and wanton; and evinced a conscious and/or reckless disregard for Plaintiff's civil rights for which punitive damages should be awarded.

108.    Plaintiff has suffered and continues to suffer injury including loss of employment, past and future loss of income and benefits of employment, and other pecuniary losses, future pecuniary losses, physical and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, other nonpecuniary losses, and other injury.

## COUNT VII
### Retaliation in Violation of
### The Virginia Human Rights Act/Virginia Values Act

109.   Plaintiff incorporates and relies upon the averments stated in the foregoing paragraphs of the Complaint as if the same were fully restated here.

110.   Defendant retaliated against Plaintiff, treated Plaintiff in a disparate manner, and terminated Plaintiff's employment because of her exercise of her rights to reasonable accommodations, and because of her opposition to Defendant's refusal to provide her reasonable accommodations, in violation of the Virginia Human Rights Act, as amended, codified at Virginia Code Ann. § 2.2-3900, *et seq.*

111.   Defendant terminated Plaintiff's employment with no prior warning, no notice, and with Plaintiff never having had any performance issues. To the contrary, Plaintiff devoted herself to her job, with positive and proven results.

112.   Defendant's retaliatory treatment of Plaintiff, including the termination of her employment and refusals to hire Plaintiff into the two positions for which she applied after termination, was in violation of the Virginia Human Rights Act, as amended.

113.   In retaliating against Plaintiff in violation of the law Defendant evinced malice, spite, and ill will; its actions were willful and wanton; and evinced a conscious and/or reckless disregard for Plaintiff's civil rights for which punitive damages should be awarded.

114.   Plaintiff has suffered and continues to suffer injury including loss of employment, past and future loss of income and benefits of employment, and other pecuniary losses, future pecuniary losses, physical and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, other nonpecuniary losses, and other injury.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, Joi L. Smith, demands judgment against Defendant, Dynamic Aviation Group, Inc., as follows:

a)  For a declaration that the acts and practices complained of herein are in violation of Plaintiff's rights as secured by the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq. (the "FMLA"), and/or the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, et seq. (the "ADA"), Title VII, and/or the ADEA, and/or the Virginia Human Rights Act, as amended, Virginia Code Ann. § 2.2-3900, *et seq.*;

b)  For an order requiring Defendant to reinstate Plaintiff to her position with Defendant, or in a position with comparable duties and responsibilities and with equal pay and benefits as Plaintiff would have received but for Defendant's conduct in violation of the FMLA and/or the ADA, and reinstating all benefits to which Plaintiff would have been entitled but for Defendant's conduct in violation of the FMLA and/or the ADA, or in the alternative if such award is not feasible, for an award of front pay and future benefits against Defendant under the FMLA and/or the ADA;

c)  For an award against Defendant Dynamic Aviation Group, Inc.  for back pay, prejudgment interest, and appropriate recovery for lost employment benefits and other affirmative relief as may be appropriate, and for all other wages and benefits denied or lost under each claim;

d)  For an award against Defendant of liquidated damages pursuant to 29 U.S.C. § 2617 and/or the ADEA;

e)  For an award against Defendant of compensatory damages under the ADA and/or the VHRA in an amount to be determined by the jury;

f) For an award against Defendant of punitive damages under the ADA and/or the VHRA in an amount to be determined by the jury;

g) For an award against Defendant of reasonable attorneys' fees and costs incurred in this action, together with expert witness fees and expenses, pursuant to the FMLA and/or ADA, and/or the ADEA, and/or the VHRA;

h) For an award against Defendant in an amount necessary to offset the adverse tax consequences of an award received in a lump sum;

i) For an award against Defendant of pre- and post-judgment interest on any monetary award under the FMLA and under the ADA; and

j) For any other relief this Court deems to be just and proper.

**DEMAND FOR A JURY TRIAL**

The Plaintiff, Joi L. Smith, pursuant to Rule 38 of the Federal Rules of Civil Procedure, hereby demands a trial by jury in this action as to all issues so triable.

JOI L. SMITH

By Counsel

*/s/Timothy E. Cupp*
Timothy E. Cupp (VSB No. 23017)
Nicole D. Faut (VSB No. 95373)
Shelley Cupp Schulte, P.C.
1951-D Evelyn Byrd Ave.
Harrisonburg, VA 22801
Tel:  (540) 432-9988
Fax:  (804) 278-9634
cupp@scs-work.com
faut@scs-work.com
*Attorneys for Plaintiff*